**Ernest F. Gould, Appellee, v. Aurora, Elgin & Chicago Railway Company, Appellant.**

**Gen. No. 4,893.**

1. INSTRUCTION—*when ignores doctrine of assumed risk.* The declaration not alleging that the plaintiff did not assume the risk from which his injury resulted, an instruction upon the prepon-

Gould v. Aurora, Elgin & Chicago Ry. Co.

derance of the evidence, as follows, is erroneous as ignoring the doctrine of assumed risk.

"The court instructs the jury that if they find from the evidence that the plaintiff has made out his case by a preponderance of the evidence, as alleged in the declaration, then the jury should find the defendant guilty, and assess his damages at whatever sum the evidence shows, if any, under the instructions of the court, he has sustained."

2. INSTRUCTION—*what should contain which concludes with direction to jury.* When an instruction directs a verdict for either party or directs a verdict in case the jury shall find certain facts, it must contain all the facts which will authorize the verdict directed.

3. PLEADING—*what not equivalent to allegation of non-assumption of risk.* Held, that an allegation contained in a declaration that the plaintiff had no knowledge of a particular condition therein averred, is not equivalent to an allegation of non-assumption of risk.

4. NEW TRIAL—*when newly discovered evidence ground for.* Newly discovered evidence material in character which would justify a change in the result, is ground for a new trial, where there was no lack of diligence in ascertaining its existence.

5. EVIDENCE—*what not part of res gestae.* A statement by a foreman or superintendent that he knew that it was dangerous for the plaintiff to work upon the platform by reason of which he was injured, made after and away from the scene of the accident, is not part of the *res gestae* and does not bind the master.

Action in case for personal injuries. Appeal from the Circuit Court of Kane county; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed April 15, 1908.

**Statement by the Court.** A power house was in course of erection for appellant at Batavia, in Kane county. After the walls were up and long before the completion of the building, two freight elevators were erected just inside the west wall of the building and they were used to carry material from the ground floor to the different floors above as required. The south elevator was operated with eight or nine counterweights weighing together about 3,500 pounds, which ran up and down in a shaft about sixteen inches by twenty-four inches in size on the north side of the elevator and back against the wall being therefore just

outside the northwest corner of the elevator shaft. When the elevator went up the counter-weights went down in this counter-weight shaft, being controlled in their direction by a groove upon an upright iron beam which formed a part of the frame of the shaft. When the elevator went down the weights went up. This counter-weight shaft was not guarded at the time here in controversy. Some considerable distance above the ground floor there was an iron or steel platform about this south elevator shaft. This platform was about twelve feet by fourteen feet. It was formed of "I" beams with other iron construction between them. Appellee was a laborer engaged in strengthening this platform by placing angle irons upon the frame thereof. He had to put bolts through the angle irons and through the "I" beams and in order to perform that work found it necessary or convenient to do the work lying upon his stomach. In that position he moved from place to place about the platform. The elevator was in operation while he was doing this work. Just prior to the accident here in question appellee, then working between the two elevator shafts, found himself unable to get in certain angle irons without help, and he called for the aid of two men who were operating the elevator. They stopped the elevator and rendered him the required assistance. They told him they were going to bring up some cinders. After they finished helping him they lowered the elevator to the bottom, took on a fireman who wished to oil some machinery, and then went up with the elevator. Just at this instant appellee accidentally placed one of his feet over or into the counter-weight shaft of the elevator in question, and as the elevator ascended and the counter-weights sank they caught and crushed his foot, which had to be amputated afterwards.

Appellee brought this suit against appellant to recover damages for said injury. He filed a declaration to which a demurrer was confessed, and then filed an amended declaration containing a single count.

It averred that appellee was in the service of appellant as a workman, described the situation and alleged that there was a guard which belonged to said counterweight shaft or slide shaft, as the amended declaration named it, which guard was necessary for the safety of the workmen about the shaft, and that by the neglect of appellant it had not been placed upon the shaft; that plaintiff had no knowledge of the unsafe condition of the elevator shaft or of the absence of guards therefrom, and that while he was at work and necessarily lying upon his stomach in the performance of his work and exercising all care for his personal safety through the negligence of appellant in allowing said weight to be operated without a proper guard and in allowing the guard to be removed from the shaft, or in negligently failing to place a guard in front thereof, and in allowing said weight shaft thereby to become out of repair and dangerous, his foot was pushed into the slide and crushed and afterwards necessarily amputated. Appellant filed pleas of the general issue and of the Statute of Limitations to said amended declaration. A demurrer was sustained to the plea of the Statute of Limitations. The cause went to trial upon the amended declaration and a plea of not guilty. Appellee had a verdict. A motion by appellant for a new trial was denied. Appellee had judgment on the verdict and this is an appeal therefrom.

HOPKINS, PEFFERS & HOPKINS, for appellant.

FRANK W. JOSLYN and WAITE JOSLYN, for appellee; BOTSFORD, WAYNE & BOTSFORD, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

The fourth instruction given to the jury at the request of appellee was as follows:

"The court instructs the jury that if they find from

the evidence that the plaintiff has made out his case by a preponderance of the evidence, as alleged in the declaration, then the jury should find the defendant guilty, and assess his damages at whatever sum the evidence shows, if any, under the instructions of the court, he has sustained."

It is argued that this instruction excludes the defense of assumed risk, and that it was therefore error to give it. Appellee was familar with the place where he was at work and with all the surroundings. The open counter-weight shaft was in plain sight to .any one who looked. The counter-weights were six feet high and passed up and down the shaft whenever the elevator moved and in the opposite direction from the elevator. There was nothing to obstruct the view of the weights as they passed up and down the shaft. There was reasonable ground for appellant to contend before the jury that appellee assumed the risk of the condition to which his injury was due. The declaration did not charge that this was a risk which appellee did not assume. It did charge that appellee had no knowledge that the counter-weights had a shaft of their own outside of the elevator shaft. But that did not constitute an averment that appellee did not assume the risk nor was it equivalent to such an allegation. The servant assumes not only all obvious dangers and all dangers which are known to him, but also all dangers which ordinary care for his own safety would have revealed to him (Jones & Adams Co. v. George, 227 Ill. 64), and he is chargeable with knowledge of all the conditions of which he, in the exercise of due care, has equal opportunity with his employer to know. E. J. & E. Ry. Co. v. Myers, 226 Ill. 358. The instruction under discussion, that if appellee had made out his case by a preponderance of the evidence as alleged in the declaration the jury should find appellant guilty and assess damages, in effect told the jury that appellant could be found guilty, even though appellee assumed the risk of that

condition which caused his injury. This was reversible error. I. C. R. R. Co. v. Smith, 208 Ill. 608, 619; Terra Cotta Lumber Co. v. Hanley, 214 Ill. 243; Montgomery Coal Co. v. Barringer, 218 Ill. 327; Pioneer Fire Proofing Co. v. Clifford, 125 Ill. App. 352. Appellee contends that the declaration negatives the assumption of risk, under the authority of Kirk & Co. v. Jajko, 224 Ill. 338, to which may be added North Chicago St. R. R. Co. v. Auffmann, 221 Ill. 614, and Springfield Boiler Co. v. Parks, 222 Ill. 355. The amended declaration in this case does not contain any such averments as those set out in the cases cited, which were there held to relieve those servants of the assumption of the risks of the conditions which caused the injuries. Appellee also contends that the error in this instruction is cured by other instructions given at the request of appellant, which properly stated to the jury the law governing the assumption of risks by appellee. There would be force in this contention if the instruction in question did not direct a verdict, but when an instruction directs a verdict for either party, or directs a verdict in case the jury shall find certain facts, it must contain all the facts which will authorize the verdict directed. Pardridge v. Cutler, 168 Ill. 504; I. C. R. R. v. Smith, *supra;* Pitman v. C. & E. I. R. R. Co., 231 Ill. 581. This instruction was especially injurious in this case because under the evidence, which we have not fully stated, it is a serious question whether appellee did not have such means of knowledge as caused him to assume the risk of the conditions which resulted in his injury.

One of the grounds upon which a new trial was asked was newly discovered evidence. Appellee testified in chief that he had no knowledge whatever of the construction of the elevator shaft; that he had never before the accident observed those counter-balance weights plying up and down; and that in all elevators which he had seen the weights go up and down in a groove or slot inside the elevator shaft itself. In sup-

port of the motion for a new trial appellant read the affidavits of Arthur C. Tremain and of E. O. Burghardt, who stated that at the time of and prior to appellee's injury they were engaged in the work of construction at said power house; that during that time appellee had been engaged in drilling holes in the counter-weight shaft of said elevator so that a wire screen might be attached to inclose the shaft in which said counter-weights worked when the elevator was in operation; that prior to the accident appellee repeatedly rode up and down; that while appellee was drilling said holes for fastening said screen to enclose said counter-weight shaft, the affiant repeatedly saw him stand upon the counter-weights and had seen him ride up and down in said counter-weight shaft while so standing on said counter-weights, and that appellee had caused said counter-weights to stop at different positions in said counter-weight shaft while he stood thereon and drilled holes up and down said shaft; that appellee was thoroughly familiar with the working of the elevator and all its parts, and with the location of the shaft in which the counter-weights worked, and with the position and operation of said counter-weights when the elevator was in operation; that the holes which appellee had been engaged in drilling to fasten said screen to enclose said shaft were in the "I" beams which formed the slide on which the counter-weights worked, and that while engaged in said work appellee repeatedly for days prior to said accident had seen the elevator and counter-weights in operation. They further stated that before the case was tried the attorneys for appellant and a special agent for appellant had inquired of them what knowledge they possessed in regard to said accident and appellee's employment there and concerning appellee's knowledge of the conditions surrounding the place of the accident and the elevator counter-weights and platform; that the affiants sympathized with appellee because he was a fellow workman and had suffered much

from the injury, and that therefore they did not disclose the facts above stated to said attorneys or to said agent, and did not allow any one to learn that they were acquainted with said facts or had any knowledge on the subject till long after the trial; and that they would testify to said facts upon another trial of said cause. Appellant also filed with said motion the affidavits of the two attorneys who tried the cause for appellant, in which they show that they had diligently questioned Tremain and Burghardt on these subjects and had failed to learn that they knew anything of appellee's knowledge of the conditions. When appellee testified that he had never seen the weights passing up and down the counter-weight shaft and did not know that they were not inside the elevator shaft and did not know that they were unguarded, appellant had no means to meet that proof, so far as appears in this record, and the affidavits of the attorneys show due diligence to ascertain if Tremain and Burghardt knew anything of appellee's knowledge of the conditions. This newly discovered evidence was very material, for if the proof had shown the facts stated in said affidavits, that would have warranted the jury in finding that appellee had full knowledge of the conditions and of the location of the counter-weight shaft, and of the manner in which the weights played up and down, and knew that it was not guarded, not only from his ability to ride up and down in the shaft but from the fact that he was doing some of the work preliminary to enclosing the counter-weight shaft with a guard. It would have warranted the jury in finding that he was guilty of contributory negligence when he placed his foot in the counter-weight shaft at a time when he knew by what he had just been told that the elevator was about to ascend which would cause the counter weights to descend. We are of opinion the court should have awarded a new trial because of this newly discovered evidence.

It was a sharply disputed question of fact whether

appellee was a servant of appellant, as alleged in the declaration, or whether the Cleveland Construction Company had the contract for the erection of said power house and appellee was in its employ. Appellee contends that appellant cannot raise this question for lack of a special plea, and relies upon McNulta v. Lockridge, 137 Ill. 270; C. & E. I. R. R. Co. v. Schmitz, 211 Ill. 446; Chicago Union Traction Co. v. Jerka, 227 Ill. 95, and cases there cited. Appellant contends that the rules laid down in these authorities do not apply to the question whether the plaintiff is the servant of the defendant, but that where the declaration avers the existence of the relation of master and servant, and the case rests upon that averment, the plaintiff must prove the allegations, relying upon such cases as Condon v. Schoenfeld, 214 Ill. 226. As the evidence is conflicting upon this subject and the question may not arise again we deem it unnecessary to decide this question.

Appellee was allowed to prove over objection that some time after the accident and at another place Aulthouse, appellee's foreman or superintendent, made remarks indicating that he knew it was dangerous to send appellee to work upon the platform where he was injured. It is a controverted question whether Aulthouse was in the employ of appellant or of the Cleveland Construction Company, or indeed was the Cleveland Construction Company itself, but in either event his statements, made after and away from the scene of the accident, could not bind appellant and should not have been admitted. M. C. R. R. Co. v. Gougar, 55 Ill. 503; Jenks v. Burr, 56 Ill. 450; Primm v. Legg, 67 Ill. 500; M. C. R. R. Co. v. Carrow, 73 Ill. 348.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Mr. Presiding Justice WILLIS having presided at the trial of this case in the lower court, took no part in its decision here.